UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

UNITED STATES LIABILITY INSURANCE CO.,
A foreign corporation

        Plaintiff,                      CASE No.:

vs.

INTERNATIONAL YACHT BROKER'S ASSOC. INC.,

        Defendant.
_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, UNITED STATES LIABILITY INSURANCE COMPANY, ("USLI"), through its undersigned counsel, sues Defendant, INTERNATIONAL YACHT BROKER'S ASSOCIATION INC., for declaratory relief and alleges as follows:

### Nature of Suit

1. This is an action for declaratory relief to declare the rights and obligations of parties under a policy of liability insurance. USLI seeks a declaration that no coverage is afforded under its Non Profit Management Liability insurance policy for any damages which have been alleged against its insured, INTERNATIONAL YACHT BROKER'S ASSOCIATION INC. ("IYBA" or "Defendant"), in the underlying class action filed by YA MON EXPEDITIONS, LLC and others and that USLI has no duty to defend or indemnify IYBA in that class action.

2. This declaratory judgment is sought to resolve an actual controversy between the parties regarding insurance coverage which is afforded to Defendant, IYBA under USLI's policy.

## Jurisdiction and Venue

3.  This is an action for declaratory relief pursuant to 28 U.S.C. Section 2201.

4.  This Court has jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1) based upon the diversity of the citizenship of the parties and the provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under a liability insurance policy.

5.  The underlying lawsuit was brought as a purported class action on behalf of YA MON EXPEDITIONS, LLC, BLUEBERRY ENTERPRISES, LLC, MAGNA CHARTA, LLC, PRIDE CONTRACTING, INC., KIP LAMAR SNELL, and JUAN GALAN and other yacht purchasers who paid a commission to a listing broker affiliated with IYBA and other yacht brokerages, who conspired "to adopt, impose and enforce an anticompetitive restraint that, as a condition for selling their yachts, requires pre-owned yacht sellers to pay a supracompetitive total aggregate commission fee that includes an inflated brokerage fee for the buyer's broker." (Par. 1, Consolidated Class Action Complaint, attached hereto as **Exhibit "A"**)

6.  The policy of insurance, which is the subject of this lawsuit, affords coverage subject to a limit of $2,000,000 for each claim. The amount in controversy is in excess of this Court's minimum jurisdictional amount of $75,000, exclusive of interest, costs and attorneys' fees.

7.  Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. Sections 1391(a) and 1391(c), because the incident giving rise to the present claim for declaratory relief occurred in this district and because the underlying lawsuit against the Insured is pending in this district.

8.  All conditions precedent to the filing of this action have occurred or have been complied with.

### Parties

9. Plaintiff, USLI, is a Nebraska corporation with its principal place of business in Wayne, Pennsylvania.

10. Defendant, INTERNATIONAL YACHT BROKER'S ASSOCIATION INC., is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.

### The *YME* Class Action

11. On February 29, 2024, IYBA was named as a defendant in a class action lawsuit styled *Ya Mon Expeditions, LLC v. International Yacht Broker's Association, Inc., et al.*, Case #1:24-cv-20805, which was filed in the United States District Court Southern District of Florida ("*YA MON* class action"). On June 10, 2024, the original *YA MON* complaint was replaced with the Consolidated Class Action Complaint, which is presently the operative pleading. A copy of the Consolidated Complaint from the *YA MON* class action is attached hereto as **Exhibit "A"** and is incorporated by reference.

12. According to the *YA MON* Complaint., IYBA claims to be "the world's largest and most influential association for the yacht brokerage & charter industry" with more than 2,000 members; it advocates for the interests of yacht brokers. (Par. 47, *YA MON* Complaint.)

13. The underlying class action seeks damages against IYBA and other defendants for "*agreeing, combining, and conspiring to adopt, impose, and enforce an anticompetitive restraint that, as a condition for selling their yachts, requires pre-owned yacht sellers to pay a supracompetitive total aggregate commission fee that includes an inflated brokerage fee for the buyer's broker.*" (Par. 1, *YA MON* Complaint)

14. Plaintiffs allege that Defendant and their co-conspirators control the market for the purchase and sale of pre-owned boats and yachts. This control of the market gives the Defendant

and their co-conspirators unchecked power to insist upon boat and yacht sellers paying inflated brokerage costs that are higher than they otherwise would be in a competitive market. (Par. 4, *YA MON* Complaint)

15. Plaintiffs allege that Defendant has contributed to the creation and maintenance of "ground rules" which govern how pre-owned boats and yachts are sold. (Par. 10, *YA MON* Complaint.) The impact of these rules, which have been set by the Defendant, is that boat and yacht owners are forced to pay overall commissions at an inflated rate, which is higher than it would be absent such anticompetitive conduct by the Defendant. (Par. 13, *YA MON* Complaint)

16. In short, Plaintiffs claim that the Defendant has created rules and regulations, i.e., *set standards*, for how the business of buying and selling pre-owned boats and yachts is conducted. The underlying Class Action is a direct challenge to the way how this business is done.

17. The underlying complaint contains the following relevant allegations (all emphasis supplied):

> 7. Most larger boats and yachts sold on the MLS[1] are subject to **standard** listing agreements (*e.g.*, a "Central Listing Agreement"), whereby the prospective seller of a yacht grants a particular broker the exclusive right to sell the yacht.
>
> 9. Central Listing Agreements are ***standardized forms with terms and conditions provided by national trade associations***, including… International Yacht Brokers Association, Inc. ("IYBA") … for boat brokers to use. Those agreements generally require the seller's broker to make a non-revocable offer of compensation, referred to at times as a "co-brokerage agreement," to the buyer's broker, who can be referred to as a "cooperating broker" …
>
> 10 Some of the MLS were founded or are owned by yacht broker associations. Others are independent. However, if the independently owned MLS want to obtain listings from brokers, ***they must conform to industry practice at the insistence of boat brokers***, who are also members of the yacht broker associations. Therefore, in either case, the boat brokerage firms, whether

---

[1] "MLS" refers to "multiple listing services"

|     | |
| --- | --- |
|     | through their membership in and influence on the yacht broker associations or through their participation in the MLS, ***have contributed to the creation and maintenance of an anticompetitive agreement that establishes the ground rules for the sale of a substantial number of pre-owned boats and yachts*** on the MLS owned or operated by Defendants. As a result of that anticompetitive agreement, boat owners who sell their boats through participating MLS end up paying the buyer's broker as part of a commission rate, and also pay an overall commission fee that is inflated and arbitrarily tied to the purchase price. |
| 13. | The upshot is twofold: (a) yacht broker associations and brokers have conspired ***to create, impose, enforce, and maintain rules that require boat and yacht owners to sign a listing agreement*** by which they agree to pay a commission to buyers' brokers as part of those listing agreements in order to sell their boats and yachts; and (b) sellers of pre-owned boats and yachts pay overall commissions at an inflated rate higher than they would absent the anticompetitive conduct alleged herein and pay a commission to the buyer's broker. |
| 47. | Defendant International Yacht Brokers Association, Inc., f/k/a the Florida Yacht Brokers Association, touts that it has "more than 2000+ members and growing" and is "the world's largest and most influential association for the yacht brokerage & charter industry." IYBA, through its own legislative affairs program, advocates for the interests of yacht brokers. In 1987, IYBA was "founded by a coalition of yacht brokerage business owners in South Florida." ***In 2013, IYBA introduced standardized contracts for the transaction of yacht sales***. ... |
| 52. | Purportedly in order to create uniformity in pre-owned yacht brokerage industry sales practices, YBAA, in partnership with IYBA and additional yacht broker associations, ***established the Certified Professional Yacht Broker ("CPYB") certification program, which is used throughout the United States***. The certification program is administered by YBAA in partnership with IYBA, NYBA, and CYBA, among other broker and marine trade associations. To obtain certification under the program requires, *inter alia*, an ***agreement to conduct all business in compliance with the CPYB Code of Ethics, among other obligations. Uniform CPYB standards, including the seller- pays-the-buyer's-broker requirement and other standardized forms***, are contained in program materials entitled, *The Guide for the Professional Practice of Yacht Brokerage & Sales* (YBAA 2020 ed.) |
| 83. | Defendants have conspired to boost buyers' brokers' commission rates and total commission rates above a competitive level and have strived to |

maintain those inflated rates through numerous actions. Among other things, they have **enacted anticompetitive rules** through MLS and influential trade associations composed of yacht brokers who should be competing with one another but, instead, cooperate with each other to the detriment of pre-owned boat sellers.

88. IYBA *rules* also direct brokers to cooperate with one another, even though their clients have diametrically competing interests.

89. Its *bylaws*, for example, provide the purpose of IYBA is "[t]o unite those engaged in the yacht brokerage business for the purpose of promoting cooperation and professionalism among its members."

90. Similarly, IYBA *Code of Ethics,* which are part of IYBA bylaws, state…

91. The *ethical rules* also prohibit brokers from competing with one another in certain ways...

92. IYBA provides a **model Central Listing Agreement** that specifies the seller is solely responsible for the broker's commission. IYBA added that provision to the Purchase and Sale Agreement ("PSA") so that a broker can point to paragraph 5 of the PSA and reassure the buyer.

93. Significantly, IYBA *rules* specify the commission split should be "negotiated [between the brokers] prior to the submission of any Offer to Purchase" thereby precluding buyers from making an offer to purchase a yacht for a reduced price by reducing the commission paid to the buyer's broker. …

125. The yacht broker associations, including Yacht Broker Association Defendants, can impose significant penalties on members *who do not comply with their rules, including rules about cooperating with competing brokers*.

131. Broker Defendants joined, furthered, and maintained the conspiracy alleged here in multiple ways, including at minimum, by: (a) having their executives participate in Yacht Broker Association Defendants, including those associations' *adoption, maintenance, and enforcement of the rule that sellers pay buyers' commissions; (b) requiring their broker employees to comply with the anticompetitive Yacht Broker Association Defendants' rules*, including the rule that sellers pay buyers' commissions; (c) having their executives promulgate and/or enforce the *anticompetitive rules* adopted by the MLS; (d) having their employees join, or be accredited by,

Yacht Broker Association Defendants; and (e) listing yachts for sale on MLS such as YATCO, YachtBroker.org, and Yacht World.

160. The Brokerage Defendants have conspired with Yacht Broker Association Defendants to implement, comply with, and enforce the **Yacht Broker Associations' rules**, including their anticompetitive rules, in furtherance of their conspiracy.

## USLI Policy

18. USLI issued a Professional Liability Policy No. NDO1579632E to Florida Yacht Brokers Association Inc. DBA: International Yacht Brokers Association, as the named insured, which provides coverage from March 1, 2024 to March 1, 2025 (the "Policy"). The Policy is attached hereto as **Exhibit "B"**.

19. The Policy includes a Non-Profit Directors and Officers Liability Coverage Part, which provides in pertinent part as follows

   **I. INSURING AGREEMENTS**

   A. Individual Insured – Non-Indemnified Coverage

   The **Company** will pay, on behalf of an **Individual Insured**, **Loss** and **Defense Costs** resulting from a **Claim** first made against an **Individual Insured** during the **Policy Period**, or Extended Reporting Period, if applicable, to the extent such **Individual Insured** is not indemnified by the **Organization** for such **Loss** and **Defense costs**

   B. Individual Insured – Indemnified Coverage

   The **Company** will pay, on behalf of the **Organization**, **Loss** and **Defense Costs** resulting from a **Claim** first made against an **Individual Insured** during the **Policy Period**, or Extended Reporting Period, if applicable, but only to the extent such **Individual Insured** is not indemnified by the **Organization** indemnifies such Individual Insured for such Loss and Defense Costs as required by law.

   C. Organization Coverage

   The **Company** will pay, on behalf of the **Organization**, **Loss** and **Defense Costs** resulting from a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period, if applicable.

20. The Policy contains the following pertinent definitions:

### III. DEFINITIONS

**Claim** means any:

1. written demand for monetary damages or non-monetary relief, including injunctive relief;
2. civil proceeding commenced by service of a complaint or similar pleading; . . .

received by, or brought or initiated against any **Insured** alleging a **Wrongful Act**, including any appeal therefrom.

A C**laim** shall be deemed made on the earliest of the date of service upon, or receipt by, any **Insured** of a potential **Claim** as described in subparagraphs 1. through 7. Above.

**Defense Costs** means:

1. reasonable and necessary legal fees and expenses incurred by the **Company**, or by any attorney designated by the **Company** to defend the **Insured**; and
2. all other fees, costs, costs of attachment or similar bonds (without any obligation on the **Company's** part to apply for or furnish such bonds).

resulting from the investigation, adjustment, defense and appeal of a Claim. Defense Costs does not include Loss or the Insured's salaries, wages, overhead or benefits expenses.

**Loss** means the amount the **Insured** becomes legally obligated to pay as a result of a **Claim**, including:

1. damages, settlements and judgments;
2. pre-judgment and post judgment interest;
3. punitive or exemplary damages to the extent such damages are insurable under applicable law, statute or regulation
4. the multiplied portion of any multiple damages award to the extent such damages are insurable under applicable law, statute or regulation. . .

For the purpose of determining the insurability of damages in items 3. And 4. Above, the laws of the jurisdiction most favorable to the insurability of such damages shall control; provided that such jurisdiction has a substantial

relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

However, **Loss** does not include:

1. fines, penalties, sanctions and forfeitures; . . .

**Wrongful Act**      means any:

1. actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duties;

    \*\*\*

    committed or allegedly committed by:

    a. The **Organization**;
    b. Any **individual Insured**, arising solely from duties conducted on behalf of the **Organization** or asserted against an **Individual Insured** because of 1. Above or
    c. An **Individual Insured** while acting in an **Outside Capacity**.

21. The Policy contains the following exclusions:

    IV.    EXCLUSIONS

    A.    The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

    Conduct
    1. Deliberately fraudulent act, omission, criminal act, or willful violation of any statute or regulation by any **Insured**; or

    2. any **Insured** having gained any profit, renumeration or other advantage to which such Insured was not legally entitled.

    provided that this exclusion will not apply to **Defense Costs** incurred until:

    a. a final, non-appealable adjudication in any underlying proceeding or action establishes such conduct; or

      b.  the **Insured** has admitted, stipulated or pleaded no contest to such conduct.

22. The Policy contains the following endorsement (DO 201 05-17), which provides:

**ACCREDITATION/CERTIFICATION/STANDARD SETTING EXCLUSION**

It is hereby agreed that the Directors and Officers **Coverage Part**, Section IV, EXCLUSIONS, Subsection A, is amended by the addition of the following:

| Accreditation/Certification/Standard Setting | accreditation, certification, standard setting, or similar such activities by or on behalf of any **Insured**; |
|---|---|

\*\*\*

## COUNT I – DECLARATORY JUDGMENT

23. USLI incorporates and restates the allegations stated in paragraphs 1-22 as though the same were fully set forth herein.

24. USLI's Policy contains an Accreditation/Certification/Standard Setting Exclusion ("Standard Setting Exclusion"), which bars coverage for standard setting , or similar such activities by or on behalf of any Insured.

25. The Complaint in the underlying action alleges price-fixing, which involves standard setting activities by IBYA including price-fixing of yacht broker commissions. These allegations place the subject loss squarely within the standard setting exclusion.

26. It is the position of USLI that no coverage is afforded under the Policy for the damages claimed against IYBA in the underlying *YA MON* class action, because coverage for such damages is expressly excluded under the Policy's Standard Setting Exclusion.

27. Accordingly, it is the position of USLI that it has no duty to defend or indemnify IYBA against any claims which have been asserted against it in the in the underlying *YA MON* class action.

28. USLI is in doubt as to its rights, duties and obligations with regard to the subject Policy of insurance.

29. An actual, present and justiciable controversy exists between USLI and its insured, Defendant, IYBA, warranting the entry of declaratory judgment by this Court.

WHEREFORE, Plaintiff, UNITED STATES LIABILITY INSURANCE COMPANY requests that this Court enter judgment in its favor and against Defendant declaring that:

    A.    The subject USLI Policy does not afford coverage for Defendant, INTERNATIONAL YACHT BROKER'S ASSOCIATION, INC., for any damages claimed against them in the underlying *YA MON* class action; and

    B.    USLI has no duty to defend or indemnify INTERNATIONAL YACHT BROKER'S ASSOCIATION, INC. with respect to any claims alleged against it in the underlying *YA MON* class action;

Plaintiff further requests that the Court grant such other relief which the Court deems appropriate and just.

**COUNT II – CLAIM FOR REIMBURSEMENT OF DEFENSE FEES AGAINST IYBA**

30. USLI incorporates and restates the allegations stated in paragraphs 1-29 as though the same were fully set forth herein.

31. USLI has agreed to provide a defense to Defendant, INTERNATIONAL YACHT BROKER'S ASSOCIATION, INC. in the underlying *YA MON* class action subject to a reservation of rights.

32. Because the claims which have been asserted against IYBA in the *YA MON* class action are not covered, USLI is entitled to recover its attorney's fees and costs incurred by USLI in defending IYBA in that action.

WHEREFORE, Plaintiff, UNITED STATES LIABILITY INSURANCE COMPANY, requests an award of all fees and costs incurred in connection with the defense of the underlying *YA MON* class action. Plaintiff further requests that the Court grant such other relief which the Court deems appropriate and just.

Dated: July 30, 2024

**HINSHAW & CULBERTSON, LLP**

By: */s/ Gary Khutorsky*
Gary Khutorsky, Esq. (FBN 814271)
gkhutorsky@hinshawlaw.com
Stephanie H. Carlton, Esq. (FBN 123763)
scarlton@hinshawlaw.com
201 East Las Olas Blvd., Suite 1450
Ft. Lauderdale, FL 33301
Tel: 954-467-7900
Fax: 954-467-1024
*Attorneys for Plaintiff, United States Liability Insurance Company*

11924\321887255.v1