**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 1:24-cv-22897-DPG**

UNITED STATES LIABILITY INSURANCE CO.,

Plaintiff,

vs.

INTERNATIONAL YACHT BROKERS ASSOCIATION INC,

Defendant.

_______________________________________________/

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DUTY TO DEFEND AND SUPPORTING MEMORANDUM OF LAW**

Defendant/Counter-Plaintiff, International Yacht Brokers Association, Inc. ("IYBA"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, moves for partial summary judgment in its favor and against Plaintiff/Counter-Defendant, United States Liability Insurance Company ("USLI"), on USLI's duty to defend IYBA. In support thereof, IYBA submits the following memorandum of law.[1]

## I. INTRODUCTION

USLI filed this action seeking a declaration that it has no duty to defend or indemnify its insured, IYBA, in an underlying class action lawsuit filed against IYBA and others for alleged antitrust violations (the "Underlying Action").[2] Specifically, the Underlying Complaint alleges

---

[1] Pursuant to S.D. Fla. L.R. 56.1, IYBA's Local Rule 56.1 Statement of Material Facts is being filed contemporaneously with this Motion. References thereto are cited herein as "SOF ¶ __."

[2] The Consolidated Class Action Complaint in the Underlying Action (the "Underlying Complaint") is attached to USLI's Complaint for Declaratory Judgment as Exhibit "A." [D.E. 1-1].

that IYBA and the other named defendants violated Section 1 of the Sherman Antitrust Act by conspiring to fix the price of yacht broker commissions and by conspiring to unreasonably restrain trade by limiting access to multiple listing services ("MLS"). (SOF ¶¶ 9-11). Because, as discussed herein, USLI has a duty to defend IYBA under the Policy, IYBA's Motion should be granted and summary judgment entered in favor of IYBA.

**A. USLI Cannot Meet its Burden on the Duty to Defend.**

Prior to the Underlying Action, IYBA purchased from USLI a Non-Profit Management Liability Policy (the "Policy") for the policy period March 1, 2024 to March 1, 2025. (SOF ¶ 1).[3] The Underlying Action is a **Claim** that was first made against IYBA during the policy period of the Policy; USLI does not dispute this. (SOF ¶¶ 8, 12). In seeking to avoid its contractual duty to defend its insured, USLI relies solely on an exclusion in the Policy for claims involving "accreditation, certification, standard setting, or similar such activities by or on behalf of any Insured." (SOF ¶ 14). Because USLI seeks to avoid its duty to defend based on an exclusion in the policy, it must demonstrate that "the allegations of the complaint are cast solely and entirely within the policy exclusion, and are subject to no other reasonable interpretation." *Luhman v. Covington Specialty Ins. Co.*, No. 16-20044-CIV-GOODMAN, 2017 WL 850178, at *5 (S.D. Fla. Mar. 2, 2017) (quoting *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001)). "If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of requiring the insurer to defend." *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. Dist. Ct. App. 1985). In other words, USLI must prove beyond all doubt that it has no duty to defend IYBA based solely on the plain language of

[3] The Policy is attached to USLI's Complaint as Exhibit "B." [D.E. 1-2].

the Policy and the allegations of the Underlying Complaint. USLI cannot meet this heavy burden, because the allegations of the Underlying Complaint do not fit solely and entirely within the "standard setting" exclusion.

USLI's interpretation is the proverbial attempt to fit a square peg in a round hole. Its entire argument depends on this Court construing a policy exclusion broadly, when Florida law requires that it be construed narrowly.[4] IYBA is being sued by a putative clas of yacht sellers for alleged price fixing and for unreasonable restraint of trade in violation of federal antitrust laws. But USLI is not relying on an *antitrust* exclusion in the Policy to disclaim its broad duty to defend—indeed, the Policy contains no such exclusion even though such exclusions are readily available. Instead, USLI is relying on an exclusion for "accreditation," "certification," and "standard setting." USLI did not, however, define any of those terms in the Policy. (SOF ¶ 15). And it cannot cite to a single decision in Florida or elsewhere (1) that construes a "standard setting" exclusion in an insurance policy, (2) that construes the term "standard setting" in the overly broad manner USLI suggests, or (3) that denies coverage for alleged antitrust violations based on an exclusion for "standard setting." To be clear, USLI cannot point to anything in the Policy or the law to show that this exclusion clearly and unambiguously bars coverage for alleged *antitrust* violations. That is because it does not.

**B. IYBA has Proffered a Reasonable Interpretation of the Exclusion that Must be Adopted.**

IYBA is yacht brokers association with over 2,000 members. [D.E. 1-1 at ¶ 47]. The applicable exclusion bars coverage for claims involving "accreditation," "certification," and "standard setting." The only reasonable interpretation is that the exclusion bars coverage when

---

[4] *Hudson v. Prudential Prop. and Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. Dist. Ct. App. 1984) ("insurance coverage must be construed broadly and its exclusions narrowly").

IYBA is sued by one or more of its members or applicants seeking to challenge a decision involving accreditation, certification, or association standards. There is nothing in the plain language of this exclusion to suggest that it would apply when, as in the Underlying Complaint, IYBA is sued by third party yacht sellers for alleged Sherman Antitrust Act violations involving alleged price fixing. An ordinary person certainly wouldn't interpret an exclusion for "accreditation," "certification," and "standard setting" to bar coverage for the antitrust claims being asserted against IYBA in the Underlying Complaint.

If USLI intended to exclude from coverage antitrust claims, it could have included a specific *antitrust* exclusion in the Policy; they are readily available on the insurance market. It did not. Nothing in the exclusion it chose to include clearly and unambiguous precludes coverage for claims alleging price fixing, unreasonable restraints of trade and violations of the Sherman Antitrust Act—all of which are at the heart of the Underlying Action. *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005) (Florida courts hold insurers "responsible for clearly setting forth what [is] excluded from coverage under the terms of the policy"). Indeed, none of those terms even appear in the exclusion. **Because it is not an antitrust exclusion**.

Even if USLI's interpretation of the exclusion were reasonable (and it is not), the Policy would be susceptible to more than one reasonable interpretation and therefore ambiguous. Because of this ambiguity, and under Florida's well-settled rules of insurance policy interpretation, the Policy must be strictly construed against USLI and in favor of the insured, IYBA. *See Washington Nat'l Ins. Co. v. Ruderman*, 117 So. 3d 943, 949-50 (Fla. 2013) (any ambiguity "must be liberally construed in favor of coverage and strictly against the insurer").

USLI therefore has a duty to defend IYBA in the Underlying Action. Accordingly, IYBA's Motion should be granted, and summary judgment entered in favor of IYBA on the duty to defend.

## II. ARGUMENT

### A. Florida's Settled Rules of Insurance Policy Interpretation

"Where the duty of an insurer rests upon the legal effect of the provisions of an insurance policy, the interpretation of the policy is a matter of law for the Court to determine, and is therefore amenable to summary judgment." *Great Am. Fid. Ins. Co. v. JWR Constr. Services, Inc.*, 882 F. Supp. 2d 1340, 1350 (S.D. Fla. 2012); *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985) ("It is well settled that the construction of an insurance policy is a question of law for the court"). "[I]nsurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (citations omitted). Florida law is well-settled that insuring or coverage clauses are construed in the broadest possible manner to provide the greatest extent of coverage. *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. Dist. Ct. App. 1984). Exclusionary clauses, in contrast, are always strictly construed. *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. Dist. Ct. App. 1997). Because exclusions are fundamentally contrary to the purpose of insurance, Florida courts hold insurers "responsible for clearly setting forth what [is] excluded from coverage under the terms of the policy." *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005). Accordingly, if an insurer intends to exclude or limit coverage, it must do so unambiguously. *Anderson*, 756 So. 2d at 36.

Where policy language is susceptible to more than one reasonable interpretation, the policy is considered ambiguous. *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010). The Florida Supreme Court has made clear that any ambiguity in insurance policy language must be liberally construed in favor of coverage and strictly against the insurer. *Ruderman*, 117 So. 3d at 949-50; *Anderson*, 756 So. 2d at 34. In other words, where "one reasonable interpretation of the

policy provisions would provide coverage, that is the construction which must be adopted." *Ruderman*, 117 So. 3d at 950. Ultimately, in determining whether policy language is ambiguous, Florida courts may consider whether clearer language was available that the insurer could have used to remove the interpretive problem. *Anderson*, 756 So. 2d at 36.

**B. The Court Should Enter Summary Judgment in Favor of IYBA on USLI's Duty to Defend IYBA in the Underlying Action**

***i. The Duty to Defend is Broad and Any Doubts Must Be Resolved in Favor of IYBA.***

Under Florida law, the duty to defend is distinct and broader than the duty to indemnify. *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813-14 (Fla. Dist. Ct. App. 1985). "Because the duty to defend is so broad and so important to an insured, its existence is determined early on based on only the allegations of the complaint." *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 691 (Fla. Dist. Ct. App. 2006); *First Am. Title Ins. Co. v. Nat. Union Fir Ins. Co.*, 695 So. 2d 475, 476 (Fla. Dist. Ct. App. 1997) ("The duty to defend is determined solely by the allegations of the complaint"); *Kings Point West, Inc. v. North River Ins. Co.*, 412 So. 2d 379, 380 (Fla. Dist. Ct. App. 1982).[5] If the allegations of the complaint bring the insured within the policy provisions of coverage, the carrier *must* defend. *Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992). "The insurer must defend when the complaint alleges facts which fairly and *potentially* bring the suit within the policy coverage." *Lime Tree Village Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th

---

[5] In contrast to the duty to defend, the duty to indemnify "is determined by the underlying facts adduced at trial or developed through discovery during the litigation." *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 691 (Fla. Dist. Ct. App. 2006); *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. Dist. Ct. App. 1996) ("Regardless of the allegations of the complaint, it is the underlying facts that determine the *duty to indemnify*") (emphasis in original). As such, and because USLI has a duty to defend IYBA, any ruling on the duty to indemnify is premature until the conclusion of the Underlying Action.

Cir. 1993) (emphasis added). In other words, if the allegations *even arguably* come within the policy coverage, a defense must be provided. *Pepper's Steel & Alloys, Inc. v. U.S. Fidelity & Guar. Co.*, 668 F. Supp. 1541, 1545 (S.D. Fla. 1987). "Thus, an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy." *First Am. Title Ins. Co.*, 695 So. 2d at 476.

In contrast, where, as here, an insurer seeks to avoid its duty to defend because of a policy exclusion, the insurer bears a heavy burden to demonstrate that "the allegations of the complaint are cast solely and entirely within the policy exclusion, and are subject to no other reasonable interpretation." *Luhman*, 2017 WL 850178, at *5. Where "the complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit." *Baron Oil Co.*, 470 So. 2d at 813-14.[6] Put simply, Florida law dictates that "[i]f the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of requiring the insurer to defend." *Id.* at 814.

***ii. The Underlying Action is a Claim that was First Made Against IYBA During the Policy Period.***

The allegations of the Underlying Complaint are within the coverage afforded under the Policy. The Policy is a "claims made" Policy with a Policy Period of March 1, 2024 to March 1, 2025. (SOF ¶ 1). The Non-Profit Directors and Officers Liability Coverage Part provides, in relevant part, that "The **Company [USLI]** will pay, on behalf of the **Organization**, **Loss** and **Defense Costs** resulting from a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period, if applicable." (SOF ¶ 2). The term "**Claim**" is defined

[6] The Policy also expressly provides that "If a **Claim** is made against an **Insured** for both **Loss** that is covered by this **Policy** and loss that is not covered by this **Policy**, the **Company** will pay as follows: 1. One hundred percent (100%) of **Defense Costs** on account of such **Claim**." (SOF ¶ 6).

to include, among other things, any "civil proceeding commenced by service of a complaint or similar pleading . . . received by, or brought or initiated against any **Insured** alleging a **Wrongful Act**, including any appeal therefrom." (SOF ¶ 3). The term "**Wrongful Act**" is defined, in relevant part, to mean any "actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duties . . . committed or allegedly committed by: a. the **Organization**." (SOF ¶ 4). The Policy further provides that USLI "shall have the right and duty to defend any **Claim** covered by this **Policy** even if the allegations are groundless, false or fraudulent." (SOF ¶ 5).

The Underlying Action is a **Claim** that was first made against IYBA during the Policy Period; USLI has never claimed otherwise. It is a "civil proceeding commenced by service of a complaint," and IYBA was served with the initial Complaint in the Underlying Action on March 28, 2024, which is during the Policy Period of the Policy. (SOF ¶ 8). The Underlying Complaint alleges **Wrongful Acts** by IYBA, namely, alleged antitrust violations involving price fixing and unreasonable restraints on trade. (SOF ¶¶ 9-11). USLI therefore has a duty to defend IYBA unless USLI can demonstrate that an exclusion unambiguously applies. It cannot.

***iii. USLI Has a Duty to Defend IYBA in the Underlying Action Because IYBA Proffers a Reasonable Interpretation of the Exclusion.***

In seeking a determination that it has no duty to defend IYBA in the Underlying Action, USLI relies solely on the Policy's Accreditation/Certification/Standard Setting Exclusion. To avoid its contractual duty to defend IYBA, USLI must therefore demonstrate, beyond all doubt, that the allegations of the Underlying Complaint are cast solely and entirely within this exclusion and subject to no other reasonable interpretation. *Luhman*, 2017 WL 850178, at *5. It is clear from the allegations in the Underlying Complaint and the plain language of the Policy, however, that USLI cannot meet this substantial burden.

The Accreditation/Certification/Standard Setting Exclusion bars coverage for "accreditation, certification, standard setting, or similar such activities by or on behalf of any **Insured**." (SOF ¶ 14). USLI admittedly did not define the terms "accreditation," "certification," and "standard setting" in the Policy and cannot cite a single decision in Florida or elsewhere that construes such an exclusion in an insurance policy. [D.E. 15 at p. 7]. USLI also cannot cite a single case anywhere holding that an exclusion for "accreditation," "certification," and "standard setting" bars coverage entirely for similar antitrust allegations involving price fixing and unreasonable restraints on trade.

Instead, USLI self-servingly posits in its summary judgment motion that "standard setting" means any "rules and regulations pursuant to which a company or organization conducts its business." [D.E. 15 at p. 7]. It then selectively cherry picks certain allegations in the Underlying Complaint that use terms like "rules," "bylaws," and "standard" agreements to argue that the entire Underlying Action arises from USLI's chosen definition of "standard setting" because it challenges the way IYBA conducts its business. USLI's proffered interpretation offends Florida law by urging "a strained and expansive reading of the exclusionary clause, violating the requirement that exclusionary clauses be read narrowly." *Quality Imports, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 So. 2d 295-96 (Fla. Dist. Ct. App. 1990). Indeed, under USLI's exceedingly broad (and hopelessly ambiguous) definition, any activity by IYBA that related to the way it conducted its business arguably would implicate the "standard setting" exclusion. In other words, virtually everything IYBA did could be considered "standard setting" according to USLI. That

interpretation is not reasonable and does not comport with the requirement that the exclusion be read narrowly.[7]

IYBA is yacht brokers association with over 2,000 members. [D.E. 1-1 at ¶ 47]. The exclusion bars coverage only for claims involving "accreditation," "certification," and "standard setting." The only reasonable interpretation of the exclusion is that it bars coverage when IYBA is sued by one or more of its members or applicants seeking to challenge a decision involving accreditation, certification, or association standards. There is nothing in its plain language to suggest that it would apply when, as in the Underlying Complaint, IYBA is sued by third party yacht sellers for alleged Sherman Antitrust Act violations involving alleged price fixing.

***iv. USLI's Case Law in its Motion is Inapposite and Does Not Foreclose its Broad Duty to Defend.***

The antitrust cases upon which USLI principally relies in its motion, *SD 3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2015), and *In re German Automotive Manufacturers Antitrust Litig.*, 392 F. Supp. 3d 1059 (N.D. Ca. 2019) [D.E. 15 at pp. 8-10], do not support USLI's expansive interpretation of the term "standard setting" or its unsupported argument that the standard setting exclusion bars coverage for the Underlying Action. Significantly, neither case even involved the interpretation of a "standard setting" exclusion in an insurance policy; both involved motions to dismiss substantive antitrust claims. The facts of those cases, moreover, are

---

[7] USLI's broad interpretation of the general phrase "similar such activities" also fails to pass muster under Florida's accepted interpretative doctrine. Under the doctrine of *ejusdem generis*, "when an enumeration of specific things is followed by some more general word or phrase, then the general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated." *Transcon Trailers, Inc. v. Northland Ins. Co.*, 436 So. 2d 380, 381 (Fla. Dist. Ct. App. 1983). In other words, "similar such activities" must be construed narrowly to include only items of the same type as those listed in the exclusion and not broadly as some amorphous catch-all as posited by USLI.

readily distinguishable from the allegations of the Underlying Complaint. Both cases dealt with "standard setting" in the context of products, which is consistent with the dictionary definition of standard as a "set of specifications that are adopted within an industry to allow compatibility between products." *American Heritage Dictionary* (5th ed. 2022).

In *SD 3*, for example, the owner of a safety technology contended that several major table-saw manufacturers conspired to boycott the company's safety technology and corrupt a private safety standard-setting process with the aim of keeping the technology off the market. 801 F.3d at 417. Based on this alleged conduct, the plaintiff sued numerous saw manufacturers and affiliated entities for alleged violations of the Sherman Antitrust Act. *Id.* Regarding the claim for standard-setting conspiracies, the plaintiff alleged that the defendants prevented private organizations from adopting its technology as a required safety device and then encouraged a safety-standard-setting organization to adopt other standards that imposed needless costs on the plaintiff. *Id.* at 435. As that court explained, "standard setting" organizations develop "technical specifications to ensure that products from different manufacturers are compatible with one another" and "address certain threshold safety concerns." *Id.* "Usually, standard-setting cases are brought when products are effectively excluded from the market by adopted *safety* standards." *Id.* at 437 (emphasis added). Because the plaintiff did not allege that its technology was excluded because of safety standards imposed by the standard-setting organization, the Fourth Circuit affirmed the district court's dismissal of the standard-setting claims. *Id.*

Similarly, in *In re German Automotive Manufacturers Antitrust Litig*, the plaintiffs alleged that certain German car manufacturers had violated the Sherman Antitrust Act by, among other things, intentionally agreeing to reduce innovation by jointly establishing, and conspiring to use, only certain "technical standards and solutions." 392 F. Supp. 3d. at 1063. In analyzing that claim,

that court noted that an agreement to use only certain technical solutions may be equivalent to "standard setting," which serves useful purposes including "protecting consumers from inferior goods" and "increasing compatibility among products." *Id.* at 1071. Because that court found it inappropriate to infer that the defendants reached an illegal agreement to reduce *product quality*, it dismissed the claim for conspiracy to reduce innovation. *Id.* at 1071-72; *see also Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988) (manufacturer of electrical conduits brought antitrust action against manufacturer of steel electrical conduits for allegedly conspiring to prevent inclusion of *product* in industry standards).

Here, IYBA is not being sued for adopting (or failing to adopt) *safety* standards as in *SD 3* or for agreeing to use only certain *technical solutions* to reduce *product quality* as in *In re German Automotive Manufacturers Antitrust Litig.* The Underlying Action has absolutely nothing to do with safety standards, technical solutions or even products at all. IYBA is being sued for price fixing for allegedly conspiring to "require yacht sellers to pay artificially inflated commissions" and for unreasonably restraining trade by limiting access to MLS by refusing to accept FSBO (for sale by owner) listings. (SOF ¶¶ 10, 11); [DE 1-1 at Counts I and II, "Conspiracy to Fix Commissions" and "Concerted Refusal to Deal," respectively]. This is not "standard setting," as that term is elucidated in both *SD 3* and *In re German Automotive Manufacturers Antitrust Litig.*, or as an ordinary person would understand it when read in conjunction with the terms "accreditation" and "certification."[8]

But even if USLI were correct (and it is not) that certain of the allegations suggested "standard setting," the claims in the Underlying Complaint still do not *unambiguously* assert *only*

---

[8] *Union American Ins. Co. v. Maynard*, 752 So. 2d 1266, 1268 (Fla. Dist. Ct. 2000) ("To properly interpret an exclusion, the exclusion must be read in conjunction with the other provisions of the policy, from the perspective of an ordinary person").

this and certainly are not cast *solely and entirely* within the exclusion upon which USLI seeks to rely. *Luhman*, 2017 WL 850178, at *5, 7 (insurer had duty to defend where allegations of underlying complaint did not unambiguously trigger exclusion and were subject to more than one reasonable interpretation). *See In re German Automotive Manufacturers Antitrust Litig,* 392 F. Supp. 3d at 1072 (the plaintiffs failed to properly allege a separate antitrust violation for price fixing); *SD 3, LLC*, 801 F.3d at 426 (affirming dismissal of "standard setting" claim but disagreeing with district court's dismissal of separate antitrust claim for a concerted refusal to deal with the plaintiff). USLI therefore has a duty to defend the entire Underlying Action. *Baron Oil Co.*, 470 So. 2d at 813-14 (where "the complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit").

At the very least, the Policy does not clearly and unambiguously exclude coverage in the manner USLI suggests. There is nothing in the plain language of the Policy that explicitly states, much less even suggests, that an exclusion for "accreditation," "certification," or "standard setting" somehow could serve to bar coverage for alleged Sherman Antitrust Act violations. To prove a violation of Section 1 of the Sherman Antitrust Act, the plaintiff must prove a "(1) conspirac[y] that (2) unreasonably (3) restrain[s] interstate or foreign trade." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019). Yet the words "antitrust," "Sherman Act," "conspiracy," "restraint of trade," "price fixing," and "unfair competition" appear nowhere in the exclusion. **Because it is not an antitrust exclusion.**

If USLI wanted to exclude from coverage any claims arising out of antitrust violations, it could have included a specific *antitrust* exclusion in the Policy. Numerous options were readily available in the insurance market. *See, e.g., Live Nation Inc. v. Illinois Nat. Ins. Co.*, No. CV 07-

02721 FMC, 2007 WL 9725132, at *3 (C.D. Cal. Sept. 28, 2007) (policy excluded coverage for claims "arising out of antitrust violations, restraint of trade, or unfair competition, or violations of the Sherman Act, the Clayton Act or the Robinson-Patman Act, as amended"); *Saint Consulting Group, Inc. v. Endurance American Specialty Ins. Co., Inc.*, 699 F.3d 544, 551 (1st Cir. 2012 (policy exclusion provided that it "shall not apply ... to any Claim based upon or arising out of any ... actual or alleged violations of the Sherman Anti–Trust Act ... or any similar provision [of] any state ... law...."); *Continental Cas. Co. v. MultiService Corp*., No. 06–2256–CM 2009 WL 1788422, at *1 (D. Kan. June 23, 2009) (policy contained exclusion for claim arising out of "Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any federal statutory provision regarding anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade"). USLI elected not to include any such exclusion in the Policy. As a result, it is now attempting to shoehorn the entirety of the allegations of the Underlying Complaint into an exclusion for "accreditation," "certification," and "standard setting"—by improperly asking the Court to construe it broadly—even though the exclusion does not clearly and unambiguously exclude coverage for claims arising out of price fixing, unreasonable restraints of trade and violations of the Sherman Antitrust Act—all of which are at the heart of the Underlying Action. *Fayad*, 899 So. 2d at 1086 (Florida courts hold insurers "responsible for clearly setting forth what [is] excluded from coverage under the terms of the policy").

***v. At an Absolute Minimum, the Exclusion is Ambiguous and Cannot Foreclose a Duty to Defend.***

Lastly, even if the Court were to accept USLI's interpretation of the exclusion as reasonable (and it is not), all that means is that the Policy is susceptible to more than one reasonable interpretation and therefore ambiguous. *Anderson*, 756 So. 2d at 34 (if relevant policy language is susceptible to more than one reasonable interpretation, the policy is considered ambiguous).

Because of this ambiguity, and under Florida's well-settled principles of insurance policy interpretation, the Policy must be construed against USLI and in favor of the insured, IYBA. *Ruderman*, 117 So. 3d at 949-950 (any ambiguity in insurance policy language "must be liberally construed in favor of coverage and strictly against the insurer").

In sum, for the Court to find for USLI on the duty to defend, USLI must prove that its coverage-defeating interpretation is the only reasonable one. USLI cannot. Even if the Court were to find some doubt as to USLI's duty to defend (of which there is none), the Court would still be required to resolve that doubt in favor of requiring USLI to defend IYBA. *Baron Oil*, 470 So. 2d at 814 ("If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of requiring the insurer to defend").

## III. CONCLUSION

Based on the foregoing, IYBA is entitled to partial summary judgment as a matter of law on USLI's duty to defend IYBA in the Underlying Action. IYBA's Motion should therefore be granted.

Dated: October 28, 2024.

Respectfully submitted,

*/s/ Jason S. Mazer*

Jason S. Mazer, Esq.
Florida Bar No. 0149871
Joshua R. Alhalel, Esq.
Florida Bar No. 0016320
**Mazer Law P.A.**
255 Alhambra Plaza, Suite 1160
Coral Gables, Florida 33134
Phone: (305) 374-6481
jmazer@mazer-law.com
jalhalel@mazer-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on parties listed via transmission of Notices of Electronic Filing generated by CM/ECF or in some other manner.

*/s/ Jason S. Mazer*

**SERVICE LIST**

Gary I. Khutorsky, Esq.
Stephanie H. Carlton, Esq.
Hinshaw & Culbertson, LLP
201 East Las Olas Blvd., Suite 1450
Ft. Lauderdale, FL 33301
Email: gkhutorsky@hinshawlaw.com
Email: scarlton@hinshawlaw.com
*Attorneys for Plaintiff USLI*